The first matter we will call for argument is Palakovic v. Wetzel et al. Mr. Goat? Brody? Brody. They've misspelled it on here, so they left the R out. I still would have mispronounced because, I'm a Pittsburgh Patriots fan that I am. I remembered that Goat and I would have pronounced it Goat. I've been getting that all my life from baseball fans. All right. Thank you, Your Honor. Hi, my name is Brett Grody. I am counsel for Appellants Rene and Darian Palakovic as administrators in the state of Brandon Palakovic. I would like to request three minutes of rebuttal time, please. Granted. Thank you. This case presents a series of Eighth Amendment claims that were raised in two complaints. An original complaint raising conditions of confinement claims based on the repeated solitary confinement of Brandon Palakovic, despite his having serious mental illness, a number of severe psychiatric diagnoses, and a history of suicide attempts and suicide alleviation. Let me begin with something of a housekeeping matter, but potentially it would be more than that. There were claims against Officers Kushner, Deuce, Stouse, and Reed, and they were, as I recall, voluntarily dismissed. Is that right? Correct. Now, under Rule 41, voluntary dismissals, unless it's specified otherwise, are without prejudice. So were these dismissals without prejudice, or were they with prejudice? They were with prejudice, I believe, Your Honor. All right. The obvious implication of that goes to whether or not we have a final order here, and I want to make sure that we're all clear that what we have is a final order. Can I ask another question that's sort of along the same lines in terms of housekeeping? Your original complaint was dismissed. You repled. In repleding, you did not replede the first two accounts of the original complaint, the serious, well, I'm not doing it justice. I should actually say precisely what those claims were, but you know the first two claims that I'm talking about, right? The conditions of compliance with mental health care claims, correct. Right. Those were not repled. Is there a problem in your seeking to appeal those? When you didn't replede, did the amended complaint supersede your original complaint and therefore leave you without an opportunity to preserve that? Well, the amended complaint was the operative complaint in the district court below. We could not appeal Judge Gibson's decisions to not apply the conditions of confinement standards in the mental health care claims. I don't think that's entirely responsive to Judge Jordan's question, though. Are we looking now at nothing but the claims in the amended complaint, or do you maintain that we may review both the complaint, both the counts in the original complaint, as well as those counts in the amended complaint, the former, even though you have not repleded? Yes, Your Honor, and there's precedent from this circuit that supports that, and I would like to… It supports what? The notion that from an appeal from a final judgment draws in question all prior non-final orders and rulings. That is from Drinkwater v. Union Carbide, 904F2D853, and it is quoted from the case Elfman Motors, Inc. v. Chrysler Corporation. But I think that what Judge Jordan's focus on is when one has an original complaint and then chooses to file an amended complaint, it supersedes the pleadings. It becomes the operative document, and if that is the case, does it mean you can only appeal the order from the amended complaint, or can you still appeal the order from the original complaint based on the basis for why it was dismissed? And if so, what's your position? Yes, we believe that we can appeal the original complaint, and that is because it was our efforts to comply with the court's ruling as to what standard applied that permitted us to bring vulnerability to suicide claims in an amended complaint but precluded consideration of the other ones that we… So as a legal matter, your position is the district court ruled, as a matter of law, you could pursue one claim in this case, and that is the vulnerability to suicide claim, and as a result of that, you… Under the Eighth Amendment and under this court's precedent that I just cited, it says that all the rulings that led to the final order that was being appealed, and because that original dismissal of the original complaint… Let's get to a bottom line here, Mr. Grady. What do you want us to do? You want us to review all the claims, don't you? Correct. And because you want us to review all the claims, well, let me ask it this way. Is it your understanding that the district court dismissed claims one and two of your original complaint because it thought your factual pleading was insufficient? It did say things like, as to the conditions of confinement complaint, quote, claims generalized allegations concerning mentally ill prisoners placed in solitary confinement are insufficient to state a plausible claim for relief of the Eighth Amendment. So was the court acting on a factual basis? You hadn't pled enough? Or was it saying, legally, you just can't make this claim, and making a legal statement, you can't make this kind of claim for some legal reason? Do you have an understanding of that? I believe that the problem was, in the first instance it was legal, in that the objective element that must be adequately pled for a vulnerability to suicide claim is that the plaintiff, in this case the decedent, had a vulnerability to suicide that showed a strong likelihood that if reasonable measures weren't taken, self-harm or an attempted self-harm would occur. Under the conditions of confinement claim, the standard is different. You look at whether or not a condition or a series of conditions acting together deprive an individual of basic human needs. So I do think there's a legal problem, but to the extent that the court said that the facts were insufficient to make out that claim, I would simply disagree that those facts were insufficient. Bottom line is, you think it's in front of us and we can run with those, right? Correct. Right. So it probably would be helpful for you to take us through both of the complaints. I realize that all of this is well set forth in the briefing, and we have two opinions from Judge Gibson. But let's start with the recognition of a principle we all acknowledge, and that is the plaintiff is master of his complaint. Now, you chose to set forth two claims here initially in the original complaint, neither of those claims being vulnerability to suicide. Am I correct that you chose to pursue the claims that way because the vulnerability to suicide cases have been out there for a while, albeit only pursuant to the 14th Amendment and pretrial detainee cases? Yes, that was a deliberate choice. And the reason we pursued the conditions of confinement claim was because we felt that the line of cases that focus on conditions of confinement and whether or not they pose a substantial risk of serious harm, to a decedent such as Mr. Polakovich, taking into account his psychological vulnerabilities in this case, we felt was a more apt line of precedent for understanding what it was that Mr. Polakovich was subjected to. So if I could ask you then, but in your original complaint, did factual allegations speak in a conjunctive tone in terms of inadequate treatment and vulnerability to suicide? That was part of the allegation. Those words were used in the original complaint. Not the vulnerability to suicide. Not in the counts. I'm talking about in the factual allegations. In the factual allegations, there were discussions that he would be at risk for decompensation, self-harm, and he had a history of suicide attempts, things of that nature. So it's your position count one and count two are deliberate indifference, Eighth Amendment claims, conditions of confinement. What is the difference between count one and count two? Does count two fail to provide adequate medical care? Correct. And what is count one from your point of view? The physical placement of someone in solitary, i.e., like the Young case, or something different? It is analogous to the Young case. It is placement of a seriously mentally ill individual in solitary confinement. Without regard to whether they're vulnerable to suicide? With regard to there being a substantial risk of serious harm, which encompasses but is not limited to suicidality in those symptoms. Really, the vulnerability to suicide cases that may be pled pursuant to our cases, our jurisprudence in that area, really are a subset of deliberate indifference cases, are they not? I would say they're a subset, more specifically Estelle v. Gamble medical care cases, in which the subject of element is deliberate indifference. Would it be your position that, especially in view of the way you pled these cases initially, that the vulnerability to suicide claims have, I don't want to use the word, some kind of heightened burden to them, but some additional showing required that is not required, where you're simply trying to show inadequate medical slash psychiatric care, or general prison conditions cases? Yes, I believe that there is a showing under the vulnerability to suicide cases that has its own set of elements, and the language that Judge Gibson honed in on, and that the adversaries did, was that there needs to be a strong likelihood. You did just say honed, H-O-N-E-D, didn't you? H-O-N-E-D? M, as in man. This is a huge issue on this court, and I applaud you for using that instead of hone. Whatever is the correct way is what I said.  You are a diplomat as well as a gentleman. What they did seem to hone in on is that we've got precedent that says something about if there's some medical care extended, things are okay. And, of course, they say he did get some medical care. How do you respond to that? How do we get around that precedent? That precedent is a truism that inadequacy or impropriety of medical care is insufficient for showing deliberate indifference, but that's not the end of the question. The provision of some medical care does not mean that that care was constitutionally adequate. The question is whether the defendants provided knowingly inferior care, or whether the care was provided so that a substantial risk of serious harm was still present. Is it your position that Judge Gibson, in addressing the deliberate indifference relative to medical care or psychiatric care, seemed to conclude that because some was provided, that was sufficient to get the defendants past deliberate indifference? Yes, that is our position. I believe that's what he did. Let me ask you also, if it is your reading of Judge Gibson's opinion with respect to the original complaint, that effectively what he was doing was declaring as a matter of law that our vulnerability to suicide cases effectively preempts other means by which a plaintiff can plead some kind of prison conditions case, where the result is prison suicide. May I answer the question? Please, yes. Yes, I believe that is our position, that that is what Judge Gibson held, because he said that the vulnerability to suicide standard must be applied because of the ultimate harm, and the ultimate harm from a constitutional violation is not itself an element of that constitutional violation, and we think that's where the legal error was in holding that that must be the standard that applies in this case. Am I correct that there really would be no difference in terms of the showing that would need to be made in a vulnerability to suicide case brought under the 14th Amendment for a pretrial detainee and a claim for a sentenced prisoner under the 8th Amendment? Are we looking really at the same showing that needs to be made, the same legal showing? Under current case law in the Third Circuit, it would be the same, although after the Kingsley opinion in 2015, I would argue for an objective, reasonable, and a standard for pretrial detainees, but that question is not in front of the court. We haven't had any cases involving sentenced prisoners, have we? I mean, Colburn 2 was ruled on summary judgment, and we'd already set out in Colburn 1. For your client, isn't it good enough right now to be saying, hey, we'd like Colburn 2 to apply here? Yes, absolutely. Good call. I just really want to follow up on that point. Colburn 2 talks about reckless indifference as opposed to deliberate indifference, and deliberate indifference applies in the 8th Amendment context. In order for us to be true to the 8th Amendment jurisprudence, wouldn't we have to have a showing of deliberate indifference or allegations for this purposes in the complaint? So wouldn't we just have to make that tweak, so to speak? Yes, although in Farmer v. Brennan, the United States Supreme Court recognized these terms as being synonymous, essentially, the recklessness and the deliberate indifference. Well, tweak or no tweak, is there any difference between reckless indifference and deliberate indifference? I mean, I think we left that open previously. Perhaps it was in Colburn in a footnote, but is there any legal difference? No, I don't believe so. I have one other question, if I could. You have said that your first complaint, and Judge Smith is the Lord's master of your complaint, you were opting for conditions of confinement, a theory. Correct. You were, based on your understanding of Judge Gibson's first opinion, you felt you were left with only the vulnerability of suicide approach, and you chose to proceed under that fashion. If for some reason we were to modify the district court's disposition, would you be abandoning the vulnerability approach, or would you be embracing it plus anything else that would be within bounds to add? Or would you abandon that and say, I'd rather not take that theory? We would like to proceed on all of the claims from those from the original complaint and those from the amended complaint that are being challenged, and we think only after discovery will it be sorted out as to whether or not all of them apply or whether or not some apply more appropriately. Another housekeeping question. As between the original complaint and the amended complaint, have you abandoned the claims against Michelle Houser, Morris Houser, Francis, Perzola, Schoenkepper, the six John Doe defendants? Yes. Yes. Very good. Thank you. We'll have you back on rebuttal, Mr. Grote. That's what I said, Grote. Yes, a little baseball fan that I am. Mr. Hopkirk. May it please the Court. My name is Howard Hopkirk. I am a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent John Wetzel, the secretary of the Pennsylvania Department of Corrections and the other named DOC officials and employees. I will be using ten minutes of the appellee's allotted time. Along with me is Cassidy Neal from Mattis Baum O'Connor in Pittsburgh. She represents the other appellees who are private health care providers. She will be using five minutes of our time. Can we just dive right in and have you explain to us how a circumstance where we've got in the record an independent evaluation from the United States Department of Justice, which is, to put it mildly, very, very clear about failures at SCI Crescent, that there's not enough in this complaint to get to discovery, to get to an opportunity to develop the record, in a case where somebody who's been evaluated by the Department of Corrections itself on multiple occasions as being at risk of suicide shouldn't be able to make a claim for vulnerability to suicide. I mean, if this case can't make it to discovery, is there any case that can make it to discovery? Your Honor, I think this is a timing question. And what I would tell you is that when this report came out, that was actually after the death. That's a kind of a so what, right? I mean, the fact that the independent evaluation happens after doesn't change the fact that before and in the complaint is a whole series of allegations, as to which the Department of Justice evaluation is nearly corroborative, that this was a guy with serious mental health problems, that the Department of Corrections knew he had serious health problems. He told them, I've got serious mental health problems. His nickname in prison was suicide. And yet, and yet, they put him in solitary confinement and three days later he's hung himself. I mean, I repeat, if this case doesn't get you past motion to dismiss, is there any set of facts that will? Does it have to be a snapshot of somebody actually tying a hangman's noose to get you past a motion to dismiss? What does it take if this isn't it? I'm not sure what the exact level would take. All right. Well, then can you point us to a precedent of this court in our vulnerability to suicide cases or any similar case factually that was disposed of at the motion to dismiss stage as opposed to summary judgment? I cannot do that, Your Honor. Neither can I in preparing for this case. What I would say is the complaint is a broad indictment of practices at SCI Crescent. But if you're talking about individual liability and not just making DOC officials strictly liable for suicide, that happens to anyone who is strictly liable. Are you speaking, though, of the original complaint or this amended complaint? Because in the amended complaint you'd have to agree that there are allegations that tag, for example, Boyles and Luther with knowledge of the deceased's medical condition, health care circumstances, prior expressions of harm and suicide, specifically knowing that. And that they sat on the board that approved the placement of people in solitary confinement. You have to agree that maybe the original complaint was deficient in the way you've described without that sort of specificity to the individual defendants. But how can you say that about the amended complaint? But are they directly responsible for what happened on the RICU? That's not the question. What's the deficiency in the complaint that points to individual responsibility given some of the indicia of conditions that Judge Jordan's question went to? Well, I think if legally just sending somebody to the RICU who has a history of mental illness, then it's sufficient and the case should go back. But it wasn't just a history of mental illness. This is a state prison case. And about 30 years ago I was a state court judge who sentenced people like Mr. Palachowicz or Palachowicz to state prisons. And the ordinary course was as it was here. This apparently has not changed. You sentenced someone and they were first erected to the Diagnostic and Classification Center at Camp Hill, Pennsylvania, which is where this gentleman went. And the whole purpose of that ultimately is to determine where that prisoner will be assigned. But in the course of that determination, interviews are done, evaluations are done, information is taken. Certainly information concerning the fact that this decedent had had mental illness problems, problems with his family, and even suicide attempts must have been revealed. Of course, we don't know that with specificity because we've never gotten to discovery. But I would not only assume, I would have to conclude that in the ordinary courses, I recall it having gone through hundreds and hundreds of sentencings and prosecuted hundreds and hundreds of cases in the state court system, that the same thing happened here. There was some kind of a record made at Camp Hill that went with the prisoner up to Crescent. Right? That's correct, Your Honor. That's how the system works. Now we, of course, don't know because we never got to discovery what would be in that record that went from Camp Hill up to Crescent. Right? Commonwealth knows that. But Plaintiff is never going to get a hold of that until he's had it discovered. Right? That's correct. Am I right that the vulnerability to suicide standards has got three components to it? That you've got to show there's a particular vulnerability to suicide that, in fact, the officer or officers knew about that and that there was reckless indifference? That's correct, Your Honor. Okay. So it's clear, isn't it, on the face of the admitted complaint that the detainee had, or excuse me, that the prisoner had a particular vulnerability to suicide? That's alleged with specificity, isn't it? Well, it's generally alleged, but I think that it's generally alleged. I mean, I don't think at the particular time that he was placed in the RHU that the record, while he was at SCI Crescent, would indicate that he had a high vulnerability to suicide at that point. I mean, obviously anyone in that condition has some vulnerability to suicide, but unless you're going to make a rule that anybody who has mental illness is. . . Anybody who has mental illness. How about anybody who the DOC has listed as a suicide risk? I mean, on the records of the Department of Corrections, as an access one with serious mental illness, complained of suicidal thoughts and been listed approximately. . . I mean, now maybe it's okay if the state wants to take the position. If the Commonwealth is going to come in and say, it's true that the records came with him from SCI Camp Hill and it's true that it's alleged in the complaint that he was evaluated and evaluated as a suicide risk at Camp Hill. It's true that when he got to Crescent, all those things came with him. But, you know, and it's true that even the intermediate evaluation showed a multitude of serious mental health issues that on the night of the decision to put him in the RHU, there wasn't an evaluation, so there can't be a showing of suicide risk. I mean, if that's the Commonwealth's position, then I guess we ought to hear that straight up. Otherwise, I'm not sure why that's the ground you're fighting on. I thought you were fighting on the deliberate indifference ground, but if you're fighting on that this complaint doesn't show a risk of suicide ground, well, that's a more remarkable position. Well, that the individual defendants wouldn't have known. Well, that's a deliberate indifference argument, right? That's not really contesting that the prisoner had a particular vulnerability to suicide, is it? I mean, it sort of emerges on different levels. I think what Judge Shoren is trying to say is, as a matter of factual allegation, the deceased's condition was set forth in the complaint, and reading it would indicate he had a stability rating of D, according to the DOC measures, expressed suicidal tendencies, and so those allegations would satisfy item number one. Is your position that the defendants who are named, the allegations don't show they knew that? That's our position. I mean, the people who were actually on the ground who were involved, they're not named, who were on the block, who were supposed to be monitoring them. So you're making an argument at this point on the second. I was just trying to, maybe this is not a fruitful exercise, I was trying to find out exactly where the fight is, right? I thought, going into that set of questions, that everybody was going to be able to agree that, yeah, Brandon Polakovich had, and I apologize if I'm saying the gentleman's name wrong. I understand what you're saying. I guess I'm a little troubled on the side of, if Brandon's vulnerable to suicide, perhaps over half the population. Well, no, wait a minute. It's not half the population. We're not in the R.H.U. And half the population didn't have that rating for that DOC tag that said, at risk of suicide, right? I mean, well, I shouldn't say that. I don't know what the facts are. Maybe half of the population is tagged that way, but it seems highly doubtful. But he was, right? This isn't, I mean, it doesn't help you to say this is just sort of generalized complaining. This was a very specific set of allegations about this particular individual. And don't the pleadings, beyond some references relative to the decedent's subjective vulnerability to suicide, go on to discuss or allege the nature of solitary confinement? Can't you read the complaint to suggest that there is a heightened susceptibility to suicide for a prisoner who is placed in solitary? Is it fair reading of the complaint? That's correct. So if you had a complaint that did no more than allege some specific facts relative to Mr. Polakovich, and then you add, once you've added allegations about the nature of solitary and some of what the data shows about it, a fortiori there would seem to be even a stronger case then being made for this particular defendant, then placed in solitary, to be susceptible to suicide. Wouldn't that be a fair reading of the complaint? That might be a fair reading, Your Honor. Do you have anything else? No. Thank you very much, Mr. Hockley. Thank you. And we will hear from Ms. Neal. Good morning. May it please the Court. My name is Cassidy Neal. I represent Dr. Rathore, Dr. Eidsvog, and MHM, Inc., the psychiatric defendants in this case. Ms. Neal, I'm looking at page 9 of your brief, and it uses a term that I found really a curiosity in this case, because to me at least, and the suggestion, the questions asked by my colleagues would suggest maybe it's not just me. You state, It is not clear from the record that these appellees were at all responsible for providing treatment to the decedent in July of 2012. Perhaps you can solve for me the great mystery of what is the record in this case other than the bare allegations of an amended complaint and a predecessor original complaint. That was an improper term to be used, but I was referring to the It really is what this case comes down to in a sense, at least some of the questions are suggesting, isn't it? We don't have a record. We have a complaint. Well, we have a set of allegations, factual variants and allegations, that have been included in both the original complaint and the first amended complaint. And that's what I was referring to in that brief, Your Honor. Well, on that same page, you also say, The first amended complaint is entirely bereft of facts to support appellant's conclusion that the decedent exhibited a particular vulnerability to suicide before he took his own life. Now, is this a timing problem? Do you mean there's nothing in the complaint to show he was at risk the night that he hung himself? Or are you really taking the position that there's nothing in the amended complaint to show he had a particular vulnerability to suicide at any point after he was taken into custody back in 2011? It's not necessarily the night before he committed suicide, but any time within the weeks or months prior to that. All of the allegations are general about Mr. Polakowicz. Really? Is it general to say he was evaluated at SCI Camp Hill? He was a rating for the lowest possible or the worst possible rating you can have for mental stability. He was a suicide risk. That's not the precise terminology, but that's a fair estimation of it. That's general? It was at some point during his incarceration. It was about a year before he hung himself, right? Correct. Okay, so that's not general. That's pretty darn specific. He was re-evaluated after that initial evaluation, and it was confirmed that he had those problems and that he, in fact, had other serious problems. That was an Access One diagnosis as an unstable person. It was a subsequent evaluation that confirmed and, in fact, demonstrated he was in worse mental health than even that first evaluation. Isn't that in the complaint? There's no specificity as to when that occurred. It could have been the day he came. It occurred while he was in prison. We know that. Within a one-year period, he only spent about a year at Crescent, right? Correct. Don't we have allegations in the record suggesting that he requested evaluation or treatment? I believe that he requested one-on-one counseling. Yes. Yes. Did he receive it? According to the First Amendment complaint, no. So when you say that the complaint is entirely bereft, which is pretty dramatic language in light of what we've just discussed and what you've got to acknowledge is in there because we can all read. Well, speak for yourself. I'm from Altoona. So what are we to take from the set of complaints except that you're making an argument? I guess I'm coming back to the question I was trying to ask initially, which is are you making some kind of time learning? That is a matter of law. Unless you're diagnosed or evaluated the day before you try to kill yourself, all bets are off. The medical personnel who are responsible have no responsibility because it just wasn't soon enough. The argument is that there has to be some particular vulnerability of suicide exhibited by the inmate at some reasonable time prior to the suicide itself. All right, Ms. Neal. Then following up on Judge Jordan's question, even if that's the case, even if there is some particular point along that temporal continuum, isn't that a determination made more appropriately at summary judgment after some records have been put together than simply from the face of a complaint? Not if the pleading can't allege that those symptoms were present at the relevant period of time. Well, that's the question, right? What's the relevant period of time? Indeed, I'd ask not just summary judgment, but is that a fact question? Is that a fact question for a fact finder to say, you know what, they were on good enough notice? They knew this within a period of X months. And we don't know what was in because, as Chief Judge Smith has pointed out, the record isn't developed. All we've got is a complaint. But isn't there enough in that complaint to tee up the idea that there might be in the records of the provider and of the prison officials enough to show that, yeah, they knew he had ongoing mental health problems right up until a few weeks or days before this happened? That question, I think, is directed towards whether or not the defendants in this case had knowledge of these issues. Am I interpreting that correctly, Your Honor? Yeah, because I thought that was the ground on which you were fighting. Now, maybe we're back to the discussion that I was having with Mr. Hopkirk a few moments ago, and that is, are you really taking the position that there's just not enough in the complaint to show that this fellow was a suicide risk? I am taking the position that there's not enough in the complaint related to the time prior to his suicide. And that timing, that timing, that's really got to be a factual issue, right? I mean, they've alleged he had these problems and you knew about it. And they've alleged he continued to have these problems. Now, you're saying, oh, he did not. I guess your argument is that as a legal matter, there has to be some corroborating proof in the complaint that he was having these problems within what you assert is a, quote, reasonable time, unquote. Where's your legal authority for that pleading standard? Well, there are several cases that explain, you know, what types of symptoms inmates should have at certain periods of time in order to show that there was a particular... Is that even a legal question? I mean, wouldn't we need expert testimony to speak to susceptibility somehow being enhanced or increased or diminished for that matter, given the time period involved? You've emphasized this temporal point. But we're not psychiatrists. Judge Gibson is not a psychiatrist. And neither were many of the other players here. How can we make that determination in the face of a complaint? And if I could just add as a given the fact we were obligated to accept the allegations as true and draw all inferences in the plaintiff's favor, how do we make that conclusion of the complaint? It's my position, Your Honors, that there are not enough facts to show that this individual had a particular vulnerability to suicide at or around the time of his suicide. Certainly, he attempted suicide in August of 2010, which is almost two years before this. If every inmate within the Department of Corrections who has a history of mental illness, a history, a diagnosis of a mental illness... We're not looking at allegations of that nature. We're looking at allegations, harking back to what Judge Jordan was saying, at a particular set of conditions. We're not saying that this broad brush people who have mental health issues are necessarily to suffer a vulnerability that the prison officials should know about. We're talking about someone who demonstrates these specific characteristics. So if you could stay focused on the factual allegations, because that's the case in front of us. Okay. The specific allegations are that this inmate attempted suicide in 2010, almost two years prior to the time of his death. That he had a history of depression, that he had mental illness that was diagnosed and recognized by the Department of Corrections upon his incarceration in 2011. A year of time goes by, and there's no specificity with the complaints that he made, the problems he was experiencing at that time. So in addition to failing to create enough facts to show this inmate had a particular vulnerability, there's no facts that the defendants in this case were aware of them at any time during this incarceration. It's just a general assertion that these individuals had access to his medical records, knew that he attempted to commit suicide, had an interaction with him on one occasion, and from that is responsible for his suicide a year later. All right. We understand your position, Ms. Neal. Thank you very much. Thank you. And we'll ask Mr. Gurdy to return to the lectern for rebuttal. I have two questions, Mr. Gurdy. First of all, all of our vulnerability suicide cases, that is, Colburn I, Colburn II, for what it matters, and Wilson, are pre-Iqbal and Quambley. Does that matter? Does the regime that has followed quick ball, as some call it, change the game of pleading for you in this case? I don't think so. Against the backdrop of the case law we have. Correct. I do not think so. I believe it's still a notice pleading standard, and we do not have to give detailed allegations in the complaint. Judge Gibson stated that himself. And with respect to Judge Gibson at round one, his opinion with respect to your original complaint, you chose to plead the matter as you pled it, as you've already said. I mean, is what the district court did in your view to have effectively hijacked the claim singularly or plural by trying to put it into this vulnerability to suicide box? It converted it into a distinct, albeit related, type of Eighth Amendment claim. Can I ask a question? I'd like you to respond, if you would, to the theme that emerged from both Mr. Hopkirk and Ms. Neal's arguments. And that is, in effect, even if one accepts that there's enough in the amended complaint to indicate that he had a particular vulnerability to suicide and conditions for bad weight a year or two earlier, that can't be enough to deal with the problem that developed when it developed. And you didn't put anything in your complaint that would indicate a problem there. There's a deficiency there. What do you have either in your legal kit or in your amended complaint as factual allegations that would meet that argument? That Mr. Polakowicz's condition of being vulnerable to suicide, of suicidal ideation, etc., was an ongoing condition that was present throughout his entire time while he was in the Department of Corrections. And that's alleged? Yes. I mean, just by looking at the totality of the factual allegations, that he had the severe psychiatric diagnosis, several of them, access one diagnosis that were linked to suicidality, that he had a history of suicide attempts, which is part of the analysis of understanding if somebody is still vulnerable to suicide, that he expressed that he had made plans to kill himself, that he had thought about dying, that he had exhibited symptoms of depression. And it is also alleged in the amended complaint as well as the original complaint that the mental health care was deficient, that he was not getting the one-on-one counseling, that the encounters he had were infrequent, and they were not in clinically appropriate settings. So if the defendant's position is that... Throughout. It's alleged that that was the case throughout. Correct. And if I could just make one more point in regard to the argument about serious mental illness, about mental illness and having to preclude anybody who's mentally ill from solitary confinement, the Department of Corrections' current policy post what happened to Brandon Polakovich is that stability rating D inmates are not to be kept in solitary confinement because of the risks and harms. Let me ask you a question that assumes the district court in the first instance denied the motion to dismiss the original complaint. Your theories did not channel our vulnerability to suicide cases, and yet I understand your causes of action to be seeking, among other things, damages for the death of Mr. Polakovich, right? Correct. So this case would play out then, assuming you went to trial, by your alleging that the conditions themselves, irrespective of what anybody thought about Mr. Polakovich's subjective, individual subjective vulnerability to suicide, was the causal agent behind his eventual suicide, is that right? Lack of adequate mental health treatment to him and the general conditions that prevailed? Yes, we would have to show that that caused the injury we're seeking recovery for. Thank you very much. We thank counsel in this very difficult and I might say troubling case. I would like to have a transcript prepared of this oral argument, and I ask counsel to come forward at this time if you would please.